Thank you, Your Honor. May it please the Court, I'm Brian Sutherland for the appellant Daniel Cisneros, the other prisoner involved, and for Reed Smith, LLP, as the real party in interest here. I'd like to reserve two minutes for rebuttal, if I could please. So, in this case, I stand before you as the appellant, in contrast with the other one. The district court concededly erred with respect to our case in two respects. First, in denying fees under 42 U.S.C. section 1988. And then second, in ruling that Reed Smith's pro bono status, its size, and its profitability were reasons to deny fees under California Code of Civil Procedure section 1021.5. And that's the main one that we've been talking about today. And although these errors are conceded, I pause to talk about them because they are pretty important to our firm and also to the amici, all of which are leading public interest organizations that supported our position. And so we're asking the Court to hold that the district court does not have authority as a matter of law to deny fees merely because a law firm represents a client pro bono. Well, the district court tried to walk back its decision in the second order. How are we supposed to treat that? Because basically, if I've got the right page here, it says, here the court did not conclude that counsel could not recover fees because it represented plaintiff on a pro bono basis, even though you pretty much said that in the first order. How do you reconcile those, and how should we? I reconcile it by saying, one, it didn't walk back its decision much. It continued to rely on the size of the firm and the purported profitability of the firm as the basis for denying fees here, essentially saying that the risk to our bottom line didn't justify an award of fees. And so it's, I think, the same point that if a large law firm is representing a client pro bono, they're just not entitled to fees, at least in that judge's courtroom. But that's directly contrary to the California Court of Appeals' decision in Rogel, and as the amici have helpfully explained, also inconsistent with California Supreme Court precedent, and not good as a matter of public policy either because all law firms should be encouraged, and perhaps particularly ones that are large and may have resources to devote to a case that may otherwise be successful and in a position to help clients like Mr. Cisneros when called upon by the district court or when called upon by the leading public interest organizations that have supported us. Is there any material difference in Mr. Marquez's case and your client's case, Mr. Cisneros, other than the pro bono representation? No. That goes to the arbitrariness of the decision. And, of course, the DOJ says, well, you can fix that by just denying fees in both cases. But the solution we think and submit is that the court should reverse with respect to us and vacate the district court's order and remand for an appropriate and award of fees. And I do think the district court should determine the amount of fees in our case since it didn't get to that point in our case. And that would be under both 42 U.S.C. Section 1988 where the error is acknowledged and then also under Section 1021.5 where the error with respect to the reason is acknowledged. And I commend the DOJ for its candor in that regard. And then we turn to the cross appeal, which is the significant benefit issue that we've been discussing this morning. And with respect to that issue, and I'd like to turn to it, this case stands for the proposition that if a prisoner has been indirectly exposed to pepper spray and complains about it, the prison should provide an opportunity to decontaminate. And what the jury verdicts do here is supply a determination on a commonly recurring set of facts. That's the important point that divides this case from other cases where either the facts weren't commonly recurring or the verdicts or the declaratory judgment or what have you, the judgment of some kind, doesn't provide any actionable moment. Or as the court put it earlier, there is no broader teaching moment in the case. And that's Flannery, for example, one of the cases on which the defendants rely. In Flannery, the trial court in California in that case simply said, now the defendants know that enforcing the law is not an empty threat. Well, that doesn't allow the defendants to change their behavior in any way. And an appellate court can appreciate that that principle that the trial court applied in Flannery didn't, it would have justified fees in every single case. And the courts asked, well, how do we draw the line between cases in which fees are justified and ones in which they're not? And the answer to that question is it's very difficult to do that. And that's the reason why the district court has the broad discretion that it has. Under the Woodland Hills case, which is the California Supreme Court case way back in the 1970s that implemented these principles that are now reflected in the statute, the court said what the trial court has to do is make a realistic assessment, based on all the circumstances in the case, about whether this judgment or the action will have a significant benefit. And after the trial court makes that determination, courts typically do defer to what the trial court has determined based on all of those factual circumstances. So let me then go to the court's order, which on this point is somewhat thin. I mean, it basically talks about defendants' argument that this is an isolated incident, and then the court says, no, there are other circumstances. And then it jumps to the number of inmates in the California system and also at Pelican Bay. Is there somewhere else I should be looking to determine this public benefit aspect? Because that's what I get from the district court order. No, Your Honor is looking at the right part of the decision. I think it's pages 11 to 13 of the excerpts of record where the court explains its reasoning. But because the district court found in our favor on this point, I think it's appropriate to look at the entire record to determine whether its reasoning is supported by the record. And here it is, because the defendants were making an argument throughout trial that their response to this incident was justified under all the circumstances. And what the jury verdict reflects here is that if the prison continues to respond to discharges of OC in this way, it has a substantial likelihood of incurring liability. And that substantial likelihood of incurring liability will change its behavior. And this is something that Officer VanGilder testified about at trial. Excuse me, Officer Vanskes. He said, I would have done things differently if I could have done them again. That's fully consistent with what the district court said here. The district court acknowledging that the jury verdict takes into account the arguments throughout trial about how the prison system's response was adequate here. So it's about a threshold determination, whether the medical attention is required or whether decontamination is required when you have indirect exposure in the system. And the prison system saying all along throughout the trial, there was no decontamination that we needed to respond to. There was not a legitimate medical need. And after this case, it can't take that approach. It has to say to itself, if there's been an accidental discharge, we need to do something more or we incur this risk of liability. And defendants can say, well, we don't agree with that. But the district court made a finding that the verdicts will make a difference here. So when you look at the arguments that they made, and it's not just the closing argument. It's also the argument that Officer VanGilder gets hit in the face with O.C. and he's fine. He doesn't go to the hospital. Or that the O.C. had a limited blast radius. It affected a certain number of square feet, but it didn't get all the way into the cells. And there were ventilation experts and a multi-day trial about the idea that this incident wasn't severe as to call for a more significant response on the part of the corrections officers. I don't think that the prison system can respond to this type of indirect exposure incident in the same way. Now that they have this verdict. And so it doesn't make a difference as a practical matter whether there's a declaratory judgment or an injunction. There's a liability risk. And if you're counsel for the prison, you're saying to yourself, well, now I have this jury verdict on my desk. We need to respond to it. And you can speculate about whether an injunction or declaratory judgment or a jury verdict is going to make a difference in a case. Every case is about the future effect, whether it's an injunction or a declaratory judgment or a verdict. And it's not whether one of those things exists, but under the Woodland Hills case, whether the district court has made a finding, a realistic assessment under all the circumstances, that the action will produce a change in the pattern of practice in the prison system. And that's what the district court did here. Other cases that come to a different conclusion, cases like Pacific Legal Foundation, are cases that you can look at and say it's hard to see how this would have produced any change in behavior. I already talked about Flannery. Pacific Legal Foundation is a case where the question was, did the property owners need to construct a seawall? You look at that question framed in that way, it's not going to make a difference in any other case, and that's what the court said. A case like Roybal, another case the defendants mentioned, that was a case where the question was whether three teachers were bilingual or not. And the trial court in that case overturned the outcome of an administrative proceeding, not a case that's going to affect other cases. Here we have a district court that came to a different conclusion, said this is going to change behavior, cites the Daniels v. McKinney case, which is a case that reversed a denial of fees, saying that when you have something where I think, I, the judge, think it's going to change behavior within the prison system, that's a circumstance in which fees are appropriate. So those are the reasons we have, Your Honors. I'll pause there in case there are further questions from the court, and if not, I'm prepared to submit. Very good. Thank you. Mr. Voth? Good morning again, Your Honors. Kevin Voth for Defendants Van Gilder. As Your Honors, in this companion case, the court should affirm the district court's denial of attorney's fees under section 1021.5 for two main reasons. Now, first, just like in the Manriquez case, Cisneros' action fails to satisfy the threshold issue of whether he is eligible for fees as acting as a private attorney general, because although Mr. Cisneros offers some slightly different arguments about the elements, they fail for basically the same reasons. At the end of the day, his $2,500 judgment did not confer a significant benefit on all other inmates throughout the system, and the cost of the litigation didn't transcend his personal interests. Before we proceed with the substance of your argument, let me make sure that I understand the position.  that appropriate in determining a fee award. Do you agree with that? Yes, Your Honor, we agree with that. Go ahead. Let me just then ask, I understand that you would like Marquez to be reversed for the reasons that you've set out before, and then you reiterated here on this public benefit. But is there any difference in these two cases, in terms of fee award, other than the pro bono representation? Well, I think there are some differences, Your Honor, in terms of assuming that Section 1021.5 applies. I think the threshold issue about the applicability of the statute is the same. Okay, I understand that. And of course, if you were to obtain a reversal in Marquez, you would expect then there would be an affirmance on that point here in this case, correct? Correct. And isn't the reverse true? I mean, I gather your argument really rises or falls on whether the district court used its discretion in determining eligibility for fees, right? That's correct, Your Honor, although we do also contend that the district court's denial of fees as to Mr. Cisneros can be affirmed based on the factors that it did cite in its decision. The district court did cite, it did not use the specific language terms, special circumstances, but the court cited as a matter of fairness and proportionality under the totality of the circumstances that the fee request needed to be, the fee request should be denied based on setting aside the pro bono issue. The fact that the very limited degree of success that the plaintiff's achieved, the small recovery, and also the court noted the large fee request itself, which the court noted was 180 times greater than what would otherwise have been allowable under the PLRA. And also cited the performance of counsel. And so under California law, We just stop and go through those. So number one, and I might not have gotten them all, but I'll try to remember, but number one in terms of the size of the recovery, there's no significant difference between Marquez and Cisneros on that. Correct? That's correct, Your Honor. And I think that this, that underscores kind of a problem with the award to Mr. Manriquez's counsel as well. I guess what I was hearing is that you were trying to distinguish this Cisneros case on certain points that might make it different from the Marquez case. But as I heard your recitation, it seemed that all of those points, including the size of the ultimate fee award, really were the same as in the Marquez case. I'm sorry, Your Honor, if I wasn't clear about that. But we would contend that if both plaintiffs were eligible for fees, they should both, they should both have been, Mr. Manriquez should also not have been able to been awarded fees in the amount that he was given because the district court also did not adequately consider. So let me just maybe go a little more pointed on the question. In terms of your position that Cisneros was a properly denied fees, if we take out the pro bono aspect, is there anything that distinguishes Cisneros from Marquez? There are, there were three factors that were, that are different. First, the court cited counsel's performance as one of the reasons that Mr. Cisneros should not receive fees. On Manriquez's side, there were also the fact that the district court credited Mr. Manriquez's counsel with the idea that he had been there, that his counsel had been precluded from taking employment, excuse me, had been precluded from taking employment as a result of his representation in the case. And there was no evidence in the record to support that, which is one of the reasons that we argued that Mr. Manriquez's fee award was also incorrect. That argument is over. So we, I don't want you to sandbag your opponent by arguing that case now, but wouldn't you agree that if there, if there were differences in performance that goes to the amount of fees, not eligibility for fees? Yes, Your Honor. I mean, if I get distilled to your essence, basically you're just arguing that neither party is entitled to fees, but if, if they are entitled to fees, you don't, you don't have any objection to a determination of the amount in this case. Is that right? I mean, I understand your argument perfectly that, that there's, there's no eligibility across the board, but I think we're trying to figure out why is there a difference in this case? Other than what the district court side of which is pro bono representation, size of firm and relative risk to the firm. Well, Your Honor, I think that yes, those factors, the limited success is the same and the, the degree of the recovery, the small scale of the benefit, those things are the same. And the reason that it can be affirmed in, in Mr. Cisneros' case is that under the California Supreme Court Chavez decision, these presented a very similar circumstance where the court said that in light of the very limited degree of success, where you look at a plaintiff who brought many claims and only prevailed on some and recovered a small amount is acceptable, permissible to consider the small degree of recovery. And in the Chavez case, the plaintiff prevailed on an employment in an employment retaliation action and actually recovered over $11,000, but then sought a half million dollar fee award. And in that case, the court said that it was entirely permissible for the trial court to deny fees altogether, given the limited degree of success and the extremely large fee request. And so under the, under the reasoning of Chavez, I think that the court can affirm the denial of fees in Mr. Cisneros' case. And so I think that those, but aside, yes, your honor, the factors that the district court cited, setting aside the pro bono factor otherwise are the same. And should the fact and nature of settlement negotiations figure into the determination of attorney's fees in your view? No, your honor. I don't think it should. I think that what I think what the jury's verdict reflects is that defendants valuation of the case was correct. This was a situation where the plaintiffs could have received the exact amount that they won at trial early on in the case, but they weren't over time. The, the settlement demands that they were making were unreasonable and defendants shouldn't be held hostage under the threat of private attorney general's fees to be coerced into entering into a settlement. When at the end of the day, the amount that was recovered is exactly the same as what had been offered. And I think that also demonstrates how the limited degree of success, how limited the degree of success was in the action. I guess I'm a little confused. So I thought your initial answer was that the settlement negotiations shouldn't figure in. Is that right?  Yes, your honor. I think that it should not figure in. I don't think there are states that have kind of put offers in terms of settlement and you make a settlement offer and then if it doesn't go through and you don't recover as much, then it limits your attorney's fees. But I take it this, this California statute doesn't have that limiting provision, correct? Your honor, I under the under section 10 21.5 I don't believe there's, there's any provision that specifically addresses the, the settlement aspect of it. In terms of the discretionary, you know, the, the trial court's discretionary determination, there are factors that the court is entitled to consider. The answer is no, there's not such a statute in California that would would have held them to differing fees had they not accepted a written off. There is a provision that is similar to rule 68 under California law where if you, yes, you make a formal offer. And if the amount recovered doesn't meet that, then the party would not be entitled to, to fees or costs or the opposing party would be, be entitled to costs. But no, no rule 68 offer was made in this case. All right. Okay. Yes. And no, nothing under the California, nothing under nothing under the California statute. That's correct. I think we have your argument at hand, but I, you're certainly if you want to make some additional points that you started to make, please go ahead. Yes, your honor. Just a couple of things to respond with, with respect to what plaintiff's counsel had mentioned about the significant benefit and the idea of about the policy. And I think that it's important to note that the policy, there was no, there was nothing in the verdict that required a change in policy and the things that plaintiffs had stated, stated about what should be changed in response. The policy had always existed. It still exists today in the same form as before the policy. See, these are policy had always required and in plaintiff's expert testified to the same thing that under title 15, when you, there is an exposure to a chemical agent, officers are required to check on inmates and ask them about whether they need decontamination, whether they need medical attention. And to provide that upon request, if an inmate calls out for man down request medical attention, there's no dispute that the policy requires that to be done. And really the dispute here is about whether or not a defendant's version versus plaintiff's version of the events is to be believed. And as I think that the issue as well seems to me to be if everyone concedes that the written policy is mostly fine, is there a pattern and practice argument for eligibility for fees? In other words, their argument as I understand it is that look, there was a pattern of practice of implementing the policy in a way that was damaging and that could affect a number of inmates. Do you think that pattern and practice can form the basis of a fee eligibility under the statute? I think it could, but there was no such allegation in this case and plaintiffs never alleged, for example, that never bought a claim against a supervisory level official where the allegation was that a policy itself, they implemented a policy so deficient that it in fact was the moving force behind the constitutional violation. And the claims that they did bring against supervisory officials, they did not prevail on those claims. Those claims were all dismissed at summary judgment. And so there, I think that it could in the rights under a different case could potentially meet that standard, but not in this case, because no such claims were made. No such allegations were made. This was never a case that was about the sufficiency of policy or adequacy of policy in the court. The court's insufficiency finding is not the same as the finding that the plaintiffs somehow unconstitutional or violated statute or violated regulations. This case was about whether the defendants was a credibility determination about what actually occurred. Did they follow policy in the jury's verdict reflects that they did not. And so for that reason, the verdict does not confer a substantial public benefit. And for that reason, the court should affirm the denial of fees to Mr. Cisneros. Thank you, counsel. We'll hear rebuttal. I just want to touch on the special circumstances argument and say that here the district court found that Reed Smith's fee request was reasonable. And so that can't be an alternative basis to affirm what it did. It just doesn't square with the reasoning of the district court. And it also said that it thanks Reed Smith for its high quality pro bono commitment to the case. And so the idea that performance of counsel could be a basis for denying fees altogether, I don't think holds up either. What defendants have pointed out is that Reed Smith cross-examined fewer witnesses at trial. So if the court wants to delve into the amount of work our team spent on the trial, then I think that's an appropriate subject for the district court and not for this court. And certainly there's not a special circumstances alternative basis for this here. So we're asking the court to reverse and remand for determination of fees. So we're changing topics. What's the best evidence in the record that you and your co-counsel made as to pattern and practice or implementation of the policy that would have implications beyond the individual case? Evidence of other instances in which the prison responded in the same way? Yes. Was that presented at trial? I don't recall evidence of that nature, Your Honor. What I know is that the record reflects that the defendants argued that when there's an incident like this one, an appropriate response doesn't have to include decontamination. And the reason for that was in the official's mind and the representatives at trial and both them and the prison guards, the contamination just wasn't serious enough to require that. And they took a risk in doing that, and it's one they're not going to take again, I don't think, in light of this case. That's what the district court held. Thank you. Thank you. I thank both counsel for your arguments this morning. The case just presented will be submitted for decision.
judges: WALLACE, THOMAS, McKEOWN